## Case No. 15,197.

UNITED STATES v. GEORGE et al.

[6 Blatchf. 37; [2] 7 Int. Rev. Rec. 51; 1 Am. Law T. Rep. (U. S. Cts.) 53.]

Circuit Court, S. D. New York. Feb. 8, 1868.

CUSTOMS DUTIES — FORFEITURES—DISTRIBUTION—INFORMER'S SHARE.

1. The provisions of the act of March 2, 1867 (14 Stat. 546), in regard to the distribution of the proceeds of fines, penalties, and forfeitures incurred under the provisions of the laws relating to the customs, commented on.

[Cited in The Monte Christo, Case No. 9,720.]

2. Those provisions apply to the proceeds of a forfeiture incurred under the 3d section of the act of August 6, 1846 (9 Stat. 54, 55).

3. The provisions of the act of 1867, compared with those of the 89th, 90th, and 91st sections of the act of March 2, 1799 (1 Stat. 695–697), in regard to the distribution of the proceeds of forfeitures for a breach of its provisions.

4. The proper practice, under the act of 1867, is for the court to pay to the collector the amount recovered, less the charges allowed, and for the collector to deduct duties and charges. where proper, and to pay the residue into the treasury of the United States, to be distributed, under the direction of the secretary of the treasury, to the persons, and in the proportions, prescribed by the decree of the court.

5. Preparatory to such decree, the court, while in possession of the fund, will determine disputes between persons claiming to share in the fund, as informers.

In this case, which was an action of debt, commenced by capias, on the 21st of December, 1867, to recover the sum of $59,722 in gold coin, and $32,000 in United States currency, "as and for forfeitures, penalties, &c., incurred for violations of the revenue laws of the United States," the defendants [John W. George and others] submitted to a final judgment for the above amounts, and paid the same into court as the proceeds of such judgment. Those proceeds were in court, awaiting such disposition of them as might be required by law. They were the proceeds of penalties and forfeitures incurred under the provisions of the laws re-

[1] [Reported by Hon William Cranch, Chief Judge.]

[2] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

lating to the customs. The record of judgment showed, that the declaration in the suit charged the defendants with having unlawfully and fraudulently withdrawn and removed from a bonded warehouse, certain merchandise which was subject to duty by law, without the payment of the legal duties thereon, in violation of the 3d section of the act of August 6, 1846 (9 Stat. 54, 55), and claimed that the value of the merchandise, being the sums before mentioned, became thereby forfeited to the United States. Such 3d section provided, that, if any warehoused goods should be fraudulently removed from any warehouse, the same should be forfeited to the United States. A person who claimed to be entitled to an informer's share in such proceeds, now petitioned the court to ascertain and determine who was entitled to the informer's share.

Christopher Fine, for petitioner.

Benjamin K. Phelps, Asst. Dist. Atty., for the United States.

BLATCHFORD, District Judge. The 1st section of the act of March 2, 1867 (14 Stat. 546), provides, that, "from the proceeds of fines, penalties, and forfeitures, incurred under the provisions of the laws relating to the customs, there shall be deducted such charges and expenses as are by law, in each case, authorized to be deducted, and, in addition, in case of the forfeiture of imported merchandise of a greater value than five hundred dollars, on which duties have not been paid, or, in case of a release thereof, upon payment of its appraised value, or of any fine or composition in money, there shall also be deducted an amount equivalent to the duties in coin upon such merchandise, (including the additional duties, if any,) which shall be credited in the accounts of the collector, as duties received, and the residue of the proceeds aforesaid shall be paid into the treasury of the United States, and distributed under the direction of the secretary of the treasury, in the manner following, to wit: one-half to the United States; one-fourth to the person giving the information which has led to the seizure, or to the recovery of the fine or penalty, and, if there be no informer other than the collector, naval officer, or surveyor, then to the officer making the seizure; and the remaining one-fourth to be equally divided between the collector, naval officer, and surveyor, or such of them as are appointed for the district in which the seizure has been made, or the fine or penalty incurred, or, if there be only a collector, then to such collector." The section then provides for a different distribution where the information is given by the officer of a revenue cutter. The 4th section of the act repeals specially two sections of two former acts, relating to matters not involving any question arising in this case, and also repeals "all other laws, or parts of

laws, inconsistent with, or supplied by. the provisions of this act." and then provides, that "the secretary of the treasury shall prescribe all needful regulations to carry out and enforce the provisions of this act."

These provisions of the act of 1867 are, to some extent, a substitute for provisions contained in the 89th, 90th. and 91st sections of the act of March 2, 1799 (1 Stat. 695–697). The 89th section authorizes the collector, within whose district a seizure is made, or a forfeiture is incurred, for any breach of that act, to receive from the court in which a trial is had of any issue of fact. in any suit founded on any such breach. the sum recovered, after deducting all proper charges, to be allowed by the court, and requires him, on receipt thereof. to pay and distribute the same, without delay, according to law. The 90th section requires, that the proceeds of sales of property condemned by virtue of the act, and not previously bonded. shall. after deducting all proper charges allowed by the court, be paid by it to the collector of the district in which the seizure or forfeiture took place, as directed in the 89th section. The 91st section provides, that all fines, penalties. and forfeitures recovered by virtue of the act (and not otherwise appropriated) "shall. after deducting all proper costs and charges, be disposed of as follows: one moiety shall be for the use of the United States, and be paid into the treasury thereof. by the collector receiving the same; the other moiety shall be divided between, and paid in equal proportions to, the collector, and naval officer of the district. and surveyor of the port. wherein the same shall have been incurred, or to such of the said officers as there may be in the said district; and. in districts where only one of the said officers shall have been established, the said moiety shall be given to such officer; provided, nevertheless. that, in all cases where such penalties, fines, and forfeitures shall be recovered in pursuance of information given to such collector by any person other than the naval officer or surveyor of the district. the one-half of such moiety shall be given to such informer, and the remainder thereof shall be disposed of between the collector. naval officer, and surveyor. or surveyors, in manner aforesaid." The section then provides for a different distribution where any fines. forfeitures, or penalties incurred by virtue of the act are recovered in consequence of any information given by any officer of a revenue cutter. By the 7th section of the act of May 28, 1830 (4 Stat. 411), it is provided. that all forfeitures incurred under that act shall be distributed according to the provisions of the act of March 2, 1799. The 1st section of the act of March 3, 1863 (12 Stat. 738). provides that property forfeited under that section. or its value. shall be disposed of as other forfeitures for violations of the revenue laws. The act of 1846. which is

the only act claimed to have been violated in the present case. contains no provision giving any share to any person of any forfeiture for a violation of that act, and no provision respecting the disposition of the proceeds of such forfeiture. I have been unable to find any provision by statute respecting the disposition of the proceeds of a forfeiture under the act of 1846, or respecting shares in the same. except the provision in the act of 1867. The provisions of the act of 1799 refer solely to forfeitures for a breach of that act itself. The act of 1867, however. applies to the proceeds of all forfeitures incurred under the provisions of any laws relating to the customs. The act of 1846 is a law relating to the customs.

On comparing the provisions of the act of 1799 with those of the act of 1867. in the particulars above recited, the following results appear: In respect to the channel of distribution, by the former act, the court is to pay the net amount remaining, after the deduction of proper charges, to the collector of the district, and he is to "pay and distribute the same without delay, according to law;" by the latter act, it is not provided to whom the court shall pay the net amount, but it is provided that the net amount shall "be paid into the treasury of the United States, and distributed under the direction of the secretary of the treasury." in the proportions, and to the persons. designated by the act, the act not stating by whom it shall be paid into the treasury. The secretary of the treasury is required. by the latter act, to distribute the amount according to law, quite as much as the collector is required, by the former act, to distribute the amount according to law. The amount is required, by the former act, to be distributed under the direction of the collector, quite as much as it is required by the latter act to be distributed under the direction of the secretary of the treasury. The provision. in the latter act, that the secretary of the treasury shall prescribe all needful regulations to carry out and enforce the provisions of the act (the 2d and 3d sections of which relate to the seizure of books and papers in cases of fraud on the revenue, and to the enforcement of liens for freight on imported merchandise in the custody of officers of the customs), gives to the secretary no greater power. in respect to prescribing regulations. in reference to the distribution of the proceeds of forfeitures. than the collector had in the same respect, under the former act. in subordination to his superior officers. or than the secretary himself had, under that act. The 4th section of the act of 1867 only repeals laws and parts of laws that are inconsistent with. or supplied by, the provisions of the act of 1867. In respect to forfeitures for breaches of the act of 1799, the provision of that act, which requires the payment by the court to the collector. of the net proceeds of such forfeitures. is not inconsistent with. or supplied by. any provision of the act of 1867.

In respect to such net proceeds, the proper construction of the act of 1867 is. that the court is still to pay to the collector. under the 89th and 90th sections of the act of 1799. the amount recovered, after deducting all proper charges allowed by the court. The collector is then to deduct, in proper cases. the amount representing duties, named in the act of 1867, and any other lawful charges. and is to pay the residue into the treasury of the United States. There is nothing, in the act of 1867, which takes away the right given to the collector, by the act of 1799, to receive from the court the proceeds of forfeitures for breaches of that act. So, also, with regard to forfeitures under the acts of 1830 and 1863. and under any other acts which adopt the mode of disposition of forfeitures prescribed by the act of 1799. In regard to the duties mentioned in the act of 1867, the collector is the proper person, and the only proper person, to ascertain the proper amount representing the duties, and it is impossible that that amount can be, as the act of 1867 requires, "credited in the accounts of the collector, as duties received," unless the collector receives the amount, so as to credi. the United States with it in his accounts, as duties received. I think that the act of 1867 intends. that the collector shall receive from the court the whole amount. and not merely an amount equal to the duties. The act evidently recognizes the then existing practice, and assumes that the collector will receive from the court the proceeds. less the lawful charges and expenses which the court may allow to be deducted from the proceeds while in court, and in substance provides. that he shall ascertain the duties, if any, and retain them. and then, instead of distributing the balance himself. shall pay it into the treasury of the United States. And there is no reason for any different mode of procedure in the case of a forfeiture for a violation of the warehousing act of 1846. nor is there any thing in the act of 1867 to indicate that the collector is not to receive the proceeds of such a forfeiture. There may be duties to be ascertained and retained by the collector. in cases under the act of 1846. quite as much as in cases under the act of 1799, or under any other customs act. The effect of the change made by the act of 1867. in regard to the channel of distribution, is merely to substitute the treasury of the United States for the coffers of the collector, as a place of deposit for the money, when nothing is left to be done in regard to it but to distribute it. and to substitute the secretary of the treasury for the collector. as the ministerial agent of distribution. In regard to the distributees, both acts give the same quantum, one-half, to the United States; the act of 1799 divides the other half equally among the collector. the naval officer. and the surveyor, except that. where some person other than the naval officer or the surveyor is informer to the collector. such informer receives a moiety of such other half, and the other moiety thereof

is divided equally among the collector, the naval officer and the surveyor; the act of 1867 gives one-fourth of the whole to the informer. and, if there be no informer other than the collector, the naval officer, or the surveyor, then to the officer making the seizure, and directs that the remaining one-fourth shall be equally divided among the collector, the naval officer, and the surveyor. Where an officer of a revenue cutter is the informer, the distributees and their shares are the same, under the two acts.

Such being the state of the law on this subject, and the money before named being in court, in this case, D. Henry Burtnett presents a petition to this court, setting forth that he is the person who gave the information which led to the recovery in this case; that he claims an interest, as informer, in said money: that five other persons, named Davis, Webster. Wiggin. Giles. and Hefflin. also claim to have given information of the character aforesaid, and claim to be informers herein; and that the petitioner has served notice of his claim. as such informer, on the collector and on the United States attorney. The prayer of the petition is, that the court will refer it to a commissioner of the court, to take proof of the facts, and of the respective claims and rights of the several persons claiming to be the informers herein. as such claimants, and report the same to this court, with his opinion thereon, as to who is or are the informer or informers herein. Notice of the presentation of the petition has been served on the United States attorney, and on the collector, and on the other persons named as claiming to be informers.

It is contended on the part of the petitioner, that the court has jurisdiction to determine the question. as to who is or are the person or persons entitled, as informer or informers. to share in the money. The attorney for the United States denies the jurisdiction of the court. and contends. that, under the act of 1867, the secretary of the treasury has the exclusive power to determine who is the informer.

On the part of the petitioner, it is urged that, independently of the act of 1867, the court has inherent jurisdiction to determine all claims to moneys which are in court. and that such jurisdiction is not taken away by the act of 1867; that, under the act of 1799, and kindred acts, it has always been held. by the courts of the United States. that they have jurisdiction to examine and decide contested claims to the proceeds of forfeitures under the act, while such proceeds are still in court, and to direct in what manner they shall be distributed; that, it having been so held in respect to the act of 1799. there is nothing in the act of 1867 taking away or affecting such jurisdiction; that the act of 1867 confers no authority on the secretary of the treasury to determine or adjudicate who the informer is. in case of a dispute; that, in such a case, a resort must be had to a proper judicial tri-

bunal; that the secretary of the treasury has no judicial functions; and that the act of 1867 merely makes him, instead of the collector, the ministerial officer for paying over the money to such persons as the proper judicial tribunal declares are entitled to it under that act.

A similar question came before the circuit court of the United States for the district of New Jersey, in 1824, in the case of Westcot v. Bradford [Case No. 17,429]. In that case, there was a forfeiture decreed by the district court for New Jersey, of certain property, for violations of the act of 1799. While the proceeds of the forfeiture were in that court, Bradford presented to it a petition, setting forth, that the condemnation took place in pursuance of information given by him to the collector, and praying for the payment to him of the informer's share, one-quarter, given by the 91st section of the act. The district court made a decree, establishing the claim of Bradford, as informer, and directing that the money in court be paid to the then collector, to be disposed of by him as directed by the decree. The decree disposed, finally, of the whole fund remaining in court, as concerned all the parties interested in it—the United States, the collector who made the seizure, and the informer—leaving nothing to be done but to execute the decree. The collector appealed to the circuit court from the decree. The circuit court held, that the petition of Bradford was an original suit, from the decree in which an appeal would lie. An objection was taken, in the circuit court, to the power of the district court to direct a distribution of the proceeds of the forfeiture remaining in court. This objection was put on the ground, that the 89th section of the act of 1799, which authorized the collector to receive from the court, or its officer, the sums recovered, after deducting costs and charges, and enjoined upon him the duty of making the distribution, was imperative on the court, and ousted its general jurisdiction to make the distribution. But the court (Mr. Justice Washington delivering the opinion) held, that the 89th section merely pointed out the officer who was to receive the money from the court, and who was to distribute it, where no dispute existed respecting the distribution; that the jurisdiction of the court, to examine into contested claims to the money, while under its control, and to direct the collector in what manner it was to be distributed, was not taken away, or even impliedly affected; and that if, upon general principles, this could be questioned, the point was directly settled in the case of Jones v. Shore's Ex'rs, 1 Wheat. [14 U. S.] 462. The decree of the district court was affirmed, so far as it directed how the funds in court should be distributed.

In the case of Jones v. Shore's Ex'rs the fund was in the circuit court, as the proceeds of a penalty or forfeiture, under the embargo act of December 22, 1807 (2 Stat. 451), and was required by the 6th section of the act of January 9, 1808 (Id. 454), to be distributed and accounted for in the manner prescribed by the act of 1799. A contest, as to shares in the fund, was brought before the circuit court. The case went to the supreme court, on a division of opinion. That court directed that the money in the circuit court be paid to the collector, with directions to him as to how he should distribute it. This was in 1816.

In the case of McLane v. U. S., 5 Pet. [30 U. S.] 404, the supreme court say: "Where a sentence of condemnation has been finally pronounced, in a case of seizure, the court, as an incident to the possession of the principal cause, has a right to proceed to decree a distribution of the proceeds, according to the terms prescribed by law; and it is a familiar practice to institute proceedings of this nature, wherever a doubt occurs as to the rights of the parties who are entitled to share in the distribution." The same doctrine was held in The Josefa Segunda, 10 Wheat. [23 U. S.] 312, 323, 324.

In Hooper v. Fifty-One Casks of Brandy [Case No. 6,674], the district court for Maine (Ware, J.) entertained the petition of an informer, for a share of the proceeds of a forfeiture, incurred under the act of 1799, the collector and surveyor being the adverse parties, and sustained the claim of the informer. The court, in its opinion, expressly upholds its jurisdiction, on the authority of the cases of Westcot v. Bradford and McLane v. U. S. [supra].

In the case of U. S. v. Fifty Thousand Cigars [Case No. 4,782], the district court for Massachusetts (Lowell, J.) entertained petitions filed by several persons claiming shares, as informers, in the proceeds, in court, of forfeitures incurred under the act of 1799, and made a decree that one of them was entitled, as informer, to one-fourth of the fund.

This jurisdiction being well established, there is nothing in the act of 1867 which takes it away, or which confers on the secretary of the treasury any more power to decide disputed claims to the fund than the collector had under the act of 1799. The judicial tribunal which has the custody of the fund, is the proper forum to entertain and decide disputes as to shares in the fund, and to direct how it shall be distributed, and to what persons, under the act of 1867, under the direction of the secretary of the treasury, as a ministerial officer. To this end, it is proper to refer the matter to a commissioner of the court, for the taking of testimony on the part of all parties concerned, and for a report. On the coming in of the report, the court will make such decree as is warranted by the facts, in regard to the subject matter of the petition, and will direct the money to be paid over to the collector, and to be by him, subject to the provisions of the act of 1867, paid into the treasury of the United States, and to be then distributed, under the direction of the secretary of the treasury, to the persons, and

in the proportions, prescribed by the decree of this court. The hearing before the commissioner will be on notice to all parties having any claim to the fund.

[Subsequently the controversy between the parties in regard to their respective rights to the fund in court was determined. Case No. 15,198.]